UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

INDIIA MARING,

                                    Plaintiff,

                                                              Case # 21-CV-6720-FPG

v.

                                                              DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                                    Defendants.

## INTRODUCTION

This is one of many cases pending before the Court that arises out of protests that erupted in the City of Rochester in September 2020 following the release of news that Daniel Prude, an unarmed black man, died during an encounter with police in March 2020.  Plaintiff Indiia Maring (they/them)—a protestor who alleges they were injured during the protests—filed this action in state court against the City of Rochester ("City"), Rochester Police Department ("RPD") Officer Tyler Couch, John Doe Police Officers 1-200, the County of Monroe (the "County"), Monroe County Sheriff Todd Baxter ("Baxter"), and Richard Roe Sheriff's Deputies 1-200,[1] for multiple federal and state claims.  The County removed the case to federal court on November 23, 2021. ECF No. 1.  In response to a motion to dismiss, Plaintiff filed an Amended Complaint on January 6, 2022.  ECF No. 7.

In the Amended Complaint, Plaintiff raises 18 claims: (1) unlawful seizure/false arrest against City Defendants, pursuant to 42 U.S.C. § 1983; (2) unlawful seizure/false arrest against RPD Officers, pursuant to New York State law; (3) evidence fabrication/denial of fair trial  against

---

[1] Couch and John Doe police officers ("RPD Officers") and the City are collectively referred to as "City Defendants."  Richard Roe Sheriff's deputies ("Sheriff's Deputies"), the County, and Baxter are collectively referred to as "County Defendants."  The RPD Officers and Sheriff's Deputies are collectively referred to as "Individual Defendants."  All defendants are collectively referred to as "Defendants."

Couch related to the December 18, 2020 arrest, pursuant to § 1983; (4) malicious prosecution against the City and Couch related to the December 18, 2020 arrest, pursuant to New York State law; (5) malicious prosecution against Couch related to the December 18, 2020 arrest, pursuant to § 1983; (6) assault and battery against the City and Individual Defendants, pursuant to New York State law;  (7) excessive force against Individual Defendants, pursuant to § 1983; (8) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (9) failure to intervene against Individual Defendants, pursuant to § 1983; (10) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (11) negligent planning of the protest response against Baxter, pursuant to New York State law; (12) negligent training, supervision, and discipline against the City, pursuant to New York State law; (13) negligent planning of the protest response against the City, pursuant to New York State law; (14) negligence against the Individual Defendants, pursuant to New York State law; (15) municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to 42 U.S.C. § 1983; (16) municipal/*Monell* liability against the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to § 1983; (17) municipal/*Monell* liability against the City for a policy, practice, and custom of retaliating against individuals who are lawfully recording police activity in public places, pursuant to § 1983; and (18) violation of the New York Right to Monitor Act, New York Civil Rights Law § 79-p, against the City Defendants.

On January 14, 2022, the City Defendants filed a motion to dismiss the First, Second, Third, Fourth, Fifth, Eighth, Ninth, Twelfth, Thirteenth, and Fourteenth Claims.   ECF No. 12. They do not move against the Sixth, Seventh, Fifteenth, Seventeenth, or Eighteenth Claims, all of

which Plaintiff asserted against them.  On February 28, 2022, the County Defendants filed a motion

to dismiss all of the claims asserted against them.  ECF No. 16.  The motions are now fully briefed.

## FACTUAL BACKGROUND

Plaintiff—who is a resident of the County—participated in large public demonstrations in

September 2020.  On September 2, 2020, at around 5:00 p.m., Plaintiff was peacefully protesting

in front of the Public Safety Building when they were shot with pepper balls and sprayed with

pepper spray and/or tear gas.  ECF No. 7 ¶¶ 27.  The following night, at around 10:30 p.m., Plaintiff

was again shot with shot with pepper balls without any warning or dispersal order being issued

first.  *Id.* ¶¶ 33-34.  At some point between then and 11:30 p.m., Plaintiff was "subjected . . . to a

large amount of chemicals from pepper spray and/or tear gas," causing Plaintiff to suffer "serious

physical and emotional injuries and other damages, including menstrual irregularities."  *Id.* ¶¶ 35-

37.

On the night of September 4-5, 2020, Individual Defendants escorted Plaintiff and other

peaceful protestors onto the Court Street Bridge.  *Id.* ¶ 39.  However, when the protestors reached

the other side of the bridge, law enforcement stopped the protestors with metal barricades, trapping

them on the bridge.  *Id.*  At around 10:43 p.m., law enforcement ordered the protestors to disperse.

*Id.* ¶ 43.  But because the protestors were trapped on the bridge, there was nowhere to go.  *Id.*

Within seconds of the dispersal order, law enforcement began firing pepper balls, pepper spray,

and tear gas at the protestors, including at Plaintiff.  *Id.* ¶¶ 44-45.  Individual Defendants "forcibly

pushed Plaintiff and other protestors off the bridge" at around 12:30 a.m., and subjected them to a

large amount of tear gas, causing serious physical and emotional damage.  *Id.* ¶¶ 46-48.

Plaintiff again attended peaceful protests on the night of September 5-6, 2020.  That night,

police escorted protestors until they approached the intersection of Broad Street and Exchange

Boulevard, which the police had closed. *Id.* ¶¶ 51-52. When Plaintiff and the other protestors approached the intersection, they were met with "an overwhelming presence of RPD officers, Sheriff's deputies and State Police in full riot gear with military grade weapons—including a bearcat tank—and police dogs." *Id.* ¶ 53. Plaintiff and the other protestors were stopped at the intersection. *Id.* ¶ 54. Individual Defendants attacked Plaintiff and other protestors with tear gas, other chemical weapons, and flash bang grenades. *Id.* ¶¶ 56-57.

Over a month later, on October 13, 2020, Plaintiff and several other individuals went to the Public Safety Building to inquire about their friend, Nicholas Wilt, who had been falsely arrested and was being detained on a mistaken warrant. *Id.* ¶ 60. While Plaintiff was attempting to ask for information, RPD Officers demanded that Plaintiff leave. *Id.* ¶ 61. Without providing enough time to comply with the order, RDP Officers pushed Plaintiff, pinning them to the wall, and causing Plaintiff to fall to the ground and hit their head. *Id.* ¶ 63. Thereafter, as Plaintiff exited the Public Safety Building, an RPD Officer hit them in the hand with a baton. *Id.* ¶ 64.

On December 18, 2020, Plaintiff and a group of about 20 other protestors held a demonstration at 87 Glasgow Street in the City to object to the unjust eviction of a single mother and her three children. *Id.* ¶ 67. When Plaintiff arrived, Couch and approximately 20 RPD Officers in full riot gear were assembled in front of 87 Glasgow Street. *Id.* ¶ 72. Plaintiff stood alone on the sidewalk and filmed the police response. *Id.* ¶ 73. At all times, Plaintiff was located on the public sidewalk and never interfered with the officers. *Id.* ¶¶ 73-74. "Suddenly, without warning or justification" Couch and other RPD Officers arrested Plaintiff "in retaliation for filming RPD officers performing their duties in a public place." *Id.* ¶¶ 75-79. Despite that Plaintiff was not committing any crime or violation at the time of their arrest, *id.* ¶ 79, Couch fabricated official police paperwork to falsely indicate that Plaintiff had committed violations, *id.* ¶¶ 82-83. As a

result, Plaintiff was charged with a violation of Penal Law § 195.05, but the charges were dismissed at the first court appearance. *Id.* ¶¶ 84-86.

Plaintiff alleges, *inter alia*, that Defendants failed to intervene on Plaintiff's behalf, that the police response to the protests and protesters was part of an unconstitutional municipal practice, that Defendants failed to properly train officers in proper protest responses, and that Defendants acted negligently in planning for and responding to the protests.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted). The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### I.      First & Second Claims: Unlawful Seizure/False Arrest on December 18, 2020

Plaintiff's First Claim is for unlawful seizure and false arrest on December 18, 2020, against City Defendants pursuant to state law; their Second Claim is for unlawful seizure and false arrest on December 18, 2020, against Couch and RPD Officers pursuant to § 1983.   City Defendants move against these claims, but only insofar as they relate to the September 2020 protests.   Because the First and Second Claims pertain to Plaintiff's alleged arrest on December 18, 2020, the City Defendants' motion with respect to those claims is denied.

### II.     Third Claim: Evidence Fabrication/Denial of Fair Trial Related to December 18, 2020 Arrest – Couch

To state a claim for fabricated evidence, a plaintiff must plead that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *O'Hara v. City of New York*, No. 17-CV-4766(ILG)(RML), 2021 WL 4932287, at *6 (E.D.N.Y. Oct. 22, 2021) (quoting another source).

The case law suggests that one court appearance post-arraignment is a sufficient deprivation of liberty.  *See Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013).  Plaintiff alleges that they were arrested on December 18, 2020, and then the charges were "dismissed in their entirety at the first court appearance on or about February 11, 2021."  ECF No. 7 ¶ 85.  But Couch argues that Plaintiff has not alleged whether they attended one court appearance post-arraignment or whether the one appearance was the arraignment.  Reading the allegations in the light most favorable to Plaintiff, the Court concludes that this claim should proceed to discovery.

III.     **Fourth & Fifth Claims:  Malicious Prosecution Under § 1983 and State Law – City Defendants**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. . . . In New York, those elements are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Rodriguez v. City of New York*, No. 21CV1649AMDRLM, 2022 WL 768159, at *6 (E.D.N.Y. Mar. 14, 2022) (quoting other sources).

The City Defendants contend that Plaintiff has not established the second element: termination of the proceeding in plaintiff's favor.  In a recent decision, the Supreme Court rejected Second Circuit precedent on the "favorable termination" element and held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).  Rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.*  Plaintiff alleges that the charges against them were dismissed at the first appearance because videos established that Couch's police report was false. ECF No. 7 ¶¶ 84-86.  Those allegations easily meet *Thompson*'s low bar.

But *Thompson* does not necessarily settle all the potential legal issues related to Plaintiff's Fifth Claim.  For one thing, while it is obvious that *Thompson* bears materially on Plaintiff's Fourth Claim, which is a malicious prosecution claim arising under *federal* law, it is unclear how *Thompson* bears on their second claim, which is a malicious prosecution claim arising under *state* common law.  *Zwick v. Town of Cheektowaga*, No. 17-CV-727, 2021 WL 4895106, at *3 (W.D.N.Y. Oct. 20, 2021) ("New York law and federal law diverge on the showing required to

7

satisfy the 'favorable termination' element."). Nevertheless, because the parties do not address this issue, the Court declines to decide it now. The Fourth and Fifth Claims may proceed.

## IV.    Seventh Claim: Excessive Force – Individual Defendants

Only the Sheriff's Deputies move against Plaintiff's excessive force claim, which is asserted against Individual Defendants.

The Sheriff's Deputies argue that the claims against individual, unnamed Sheriff's deputies must be dismissed because Plaintiff's allegations constitute impermissible "group pleading" and that Plaintiff has not alleged that County Defendants used the requisite force. ECF 16-3 at 11.

First, to be sure, a complaint that "lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct . . . . fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted). But Plaintiff has not lumped all Defendants' conduct together. Rather, they claim that unknown Sherriff's Deputies "and/or" unknown RPD Officers shot pepper balls at them and used pepper spray on them during the September 2-6, 2020 protests.[2] ECF No. 7 ¶ 199. That is a specific allegation regarding as-of-yet unknown deputy or deputies. Given the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible. The Court will permit Plaintiff to conduct discovery to determine the identities of any such Sheriff's Deputies.

Second, the Sheriff's Deputies argue that Fourth Amendment liability is premised on the use of "excessive force when detaining or arresting individuals," and that the Amended Complaint contains no allegation that the Sheriff's Deputies used excessive force during an arrest. ECF No. 16-3 at 11; *see Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). But Plaintiff alleges that

---

[2] Plaintiff also alleges that RPD Officers used excessive force on them on October 13, 2020 and December 18, 2020, but because City Defendants do not move against this claim, the Court declines to address the City-specific allegations.

Individual Defendants used "less-than-lethal" military-grade weapons and chemical weapons against Plaintiff. ECF No. 7 ¶¶ 18, 200. Courts have routinely concluded that the use of such weapons against protestors constitutes a seizure for purposes of the Fourth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 540-42 (2d Cir. 2018) ("Our sister circuits and district courts in this Circuit have routinely applied excessive force principles to crowd control situations.").

## V.   Sixth Claim: Assault & Battery – City and Individual Defendants

The Sheriff's Deputies again move to dismiss the Sixth Claim for assault and battery for the same reasons they move to dismiss the Seventh Claim for excessive force. "Courts in the Second Circuit have found that [f]ederal excessive force claims and state law assault and battery claims against police officers are nearly identical." *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (internal quotation marks omitted). Therefore, for the same reasons articulated above, the Sheriff's Deputies' motion to dismiss the Sixth Claim for assault and battery is denied.

## VI.   Eighth Claim: First Amendment Infringement & Retaliation – All Defendants

The Amended Complaint advances two theories of First Amendment liability: (a) that Defendants "retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment" and (b) that Defendants "imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to subjecting Plaintiff to excessive force, in arresting and prosecuting [P]laintiff, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights." ECF No. 7 ¶ 209. Both theories are premised on Defendants' retaliation for Plaintiff expressing their views.

To plead a First Amendment retaliation claim a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially

caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

The County Defendants argue that Plaintiff has not established any constitutional injury because Plaintiff has not alleged that Plaintiff was unable to protest or stopped protesting because of any action taken by the Sheriff's Deputies. ECF No. 16-3 at 14-15.

However, "[t]he type of allegations necessary to satisfy the injury element of a First Amendment retaliation claim vary depending on the factual context." *Morales v. Valley Stream Union Free Sch. Dist. 24*, 527 F. Supp. 3d 470, 474 (E.D.N.Y. 2021) (quoting another case). As a result, "[c]hilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 at 160 (emphasis in original).

Here, Plaintiff alleges that they were physically injured because Defendants did not agree with her views on policing. ECF No. 7 ¶¶ 94, 116. Viewed in the light most favorable to Plaintiff, at this stage, the Court concludes that such physical injuries are "some other concrete harm" and therefore meet the causation requirement.

To the extent Defendants argue that the City's emergency order vitiates any First Amendment retaliation claim, that argument is misplaced. The City Defendants insist that the Court has already upheld the constitutionality of the Emergency Order. ECF No. 17-2 at 10. That is not entirely accurate. To be sure, in *Martin v. Warren*, 482 F. Supp. 3d 51 (W.D.N.Y. 2020), District Judge Charles J. Siragusa denied plaintiff-protestors' motion for a preliminary injunction, concluding that they were not likely to succeed on their arguments that the emergency order's curfew was pretextual, unrelated to significant government interests, or not narrowly tailored. But

he did not affirmatively find that the emergency order was a reasonable time, place, and manner restriction.  And even if he did, there is nothing to suggest that police action purportedly taken under the emergency order could not supply the basis for a retaliation claim.  Finally, as Plaintiff points out, many of the alleged retaliatory acts did not take place during the time the emergency order was in force.  Therefore, Defendants' motion to dismiss the Eighth Claim is denied.

## VII.    Ninth Claim: Failure to Intervene – Individual Defendants

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source).  To state a claim against an officer for his or her failure to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Individual Defendants argue first that Plaintiff has failed to plead the second element—that they knew that Plaintiff's constitutional rights were being violated.  Although this claim in the Amended Complaint does not contain the words "knew" or "knowledge," it does state facts sufficient to infer knowledge.  For example, the Amended Complaint contains facts suggesting that Individual Defendants were in close proximity to all of the alleged constitutional violations as they were occurring and were therefore aware of them.  These allegations are sufficient to proceed to discovery.  *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("Because [plaintiff's] complaint alleges facts from which this Court

11

could reasonably infer that at least one of the defendants had reason to know that [plaintiff] was being unjustifiably arrested, her claim may proceed.").

Second, Individual Defendants argue that a failure to intervene claim cannot lie against law enforcement officers who also engaged in the underlying constitutional violation. Essentially, Individual Defendants urge the Court to dismiss the failure to intervene claim because Defendants could not possibly have committed the underlying constitutional violations (such as excessive force and false arrest) while they simultaneously failed to intervene to prevent those same violations.

That is a misreading of the facts and law. Plaintiff alleges multiple constitutional violations, and it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another. Moreover, "the plaintiff is allowed to plead in the alternative" and "the alternative claims need not be consistent." *Breton v. City of New York*, 404 F. Supp. 3d 799, 814 (S.D.N.Y. 2019) (declining to dismiss failure to intervene claim on the basis that defendant "directly participated in both the arrest and prosecution and therefore could not have intervened").

## VIII.   Tenth Claim: Negligent Training, Supervision, and Discipline – Baxter

"It is well-settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function." *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013). There is no question that the Sheriff's Deputies here were performing a criminal justice function during the protests.

However, in contrast to *respondeat superior* liability, "a sheriff *may* be held liable for his own negligent conduct, including a failure to train or supervise his subordinates." *Id.* at *19

(emphasis added); *see Cash v. Cnty. of Erie*, No. 04-CV-182C(F), 2007 WL 2027844, at *5 (W.D.N.Y. July 11, 2007) ("[A] cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer.").

Baxter argues that he cannot be held liable for his own alleged negligent conduct if the Sheriff's deputies were acting outside the scope of their employment. This argument conflates the unique standard for a sheriff's liability under a negligent training, supervision, and discipline theory, with the standard for other municipal employers, explained below with respect to the City. Baxter's argument, therefore, is misplaced.

So too is Baxter's argument that the Amended Complaint is devoid of allegations that Baxter was ever aware of any supervision or training failures. As explained below with respect to *Monell* liability, Plaintiff has alleged that Baxter took "no steps to train Sheriff's Deputies on lawfully policing protests and other First Amendment activities," ECF No. 7 ¶ 119, and that Baxter failed to train Sheriff's Deputies on how to distinguish peaceful protests from acts of violence and how they should respond to each differently, *id.* ¶ 120. Accordingly, Baxter's motion to dismiss the negligent training, supervision, and discipline claim is denied.

## IX.   Eleventh Claim: Negligent Planning – Baxter

Plaintiff asserts a claim against Baxter for his own negligent planning of the protest response. Baxter and Plaintiff agree that a "special duty" is required to establish a negligence claim against Baxter, but Baxter argues that Plaintiff has not established that Baxter owed a "special duty" to Plaintiff and that the absence of such a "special duty" is fatal to their claim. The Court agrees with Baxter that Plaintiff must allege a "special duty," but it concludes that—at least for purposes of this motion to dismiss—Plaintiff has done so.

"When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting another source). "A municipality performs a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.* at 134-35. "Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.* at 135. It is Plaintiff's burden to establish a special relationship and "where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013).

To establish such a special relationship, Plaintiff must plead four elements:

(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.*

Plaintiff argues that no special duty/relationship is required where, as here, the municipality has not failed to protect Plaintiff against a *third party*; rather, Plaintiff argues that Baxter negligently failed to protect protestors against himself and his deputies. There is no support for this argument. To be sure, many of the "special relationship" cases the parties cite involve third parties. But the New York Court of Appeals recently confirmed that "plaintiffs must establish that a municipality owed them a special duty when they assert a negligence claim *based on actions taken by a municipality acting in a governmental capacity*." *Ferreira v. City of Binghamton*, No.

14

10, 2022 WL 837566, at *1 (N.Y. Mar. 22, 2022) (emphasis added).  In *Ferreira*, the Second

Circuit certified the following question to the New York Court of Appeals:

> Does the "special duty" requirement—that, to sustain liability in negligence against
> a municipality, the plaintiff must show that the duty breached is greater than that
> owed to the public generally—apply to claims of injury inflicted through municipal
> negligence, or does it apply only when the municipality's negligence lies in its
> failure to protect the plaintiff from an injury inflicted other than by a municipal
> employee?

*Id.* at *2.  The New York Court of Appeals answered that a plaintiff must plead a special duty even

where, as here, Plaintiff alleges injury from a municipal employee's direct negligence, rather than

from a municipality's failure to protect Plaintiff from some third party.  It explained that a rule,

like that advanced by Plaintiff "purporting to draw a distinction between those negligence claims

alleging injuries inflicted by municipal actors and those in which the injury is alleged to be inflicted

by a nongovernmental actor [ ] is belied by our precedent, unworkable, and contrary to the public

policies upon which the special duty requirement is founded."  *Id.* *6.  Accordingly, Plaintiff must

establish a special duty to survive a motion to dismiss the negligent planning claim.

Here, Plaintiff alleges that Baxter "had a special duty to ensure that the rights of Plaintiff

and other protestors to free speech, expression and to assemble under Article I, section 8 of the

New York State Constitution were not violated, and that protestors were not assaulted, battered,

and subjected to excessive force and/or falsely arrested by law enforcement."  ECF No. 7 ¶ 231.

Although courts have not specifically found that a special duty arises in these circumstances,

*Ferreira* is instructive.

There, the police obtained information that Michael Pride—a suspect who police believed

to be armed and dangerous—resided at a certain apartment in Binghamton.  *Ferreira*, 2022 WL

837566, at *1.  The police obtained a no-knock warrant for the residence, surveilled the residence,

and observed Pride leave the residence.  The police never saw Pride return to the apartment or

conduct additional surveillance.  But because the police believed Pride to be heavily armed and dangerous, the following morning, they executed the no-knock warrant with a SWAT team.  Upon entry, the police encountered plaintiff, who was unarmed, and shot him in the stomach.  Plaintiff sued Binghamton and the police department in federal court, alleging that defendants were negligent in planning the raid.  *Id.* *2.  A jury determined that Binghamton was negligent and it appealed to the Second Circuit, which certified the "special duty" question to the New York Court of Appeals.  As explained above, the New York Court of Appeals determined that a plaintiff must establish a "special duty" when suing a municipality in negligence for an injury it directly inflicted. But the court noted that "because the underlying premise of the certified question appears to be that a special duty could not be established in a scenario like the one presented, we take this opportunity to clarify that this is not the case: a special duty may be established where the police plan and execute a no-knock search warrant on a targeted residence."  *Id.* at *8.

The court explained that execution of a no-knock warrant raises a "special duty" because "when police plan and execute a no-knock warrant, they effectively take control of the targeted premises, knowingly creating an unpredictable and potentially dangerous condition at a particular premises."  *Id.*  at *9.  The court further explained that

> [i]n a no-knock warrant situation, the police exercise extraordinary governmental power to intrude upon the sanctity of the home and take temporary control of the premises and its occupants. In such circumstances, the police direct and control a known and dangerous condition, effectively taking command of the premises and temporarily detaining occupants of the targeted location. As a result, the municipality's duty to the individuals in the targeted premises, a limited class of potential plaintiffs, exceeds the duty the municipality owes to the members of the general public. A special duty therefore arises when the police plan and execute a no-knock search warrant at an identified residence, running to the individuals within the targeted premises at the time the warrant is executed. In other words, in those circumstances, the police take positive control of a known and dangerous condition, creating a special duty under the third situation recognized by this Court.

*Id.*

16

Although this case does not present the no-knock situated addressed in *Ferreira*, there are some compelling similarities.  Indeed, like executing a no-knock warrant, law enforcement responding to a protest may in some senses take "positive control of a known and dangerous condition"—one that is dynamic, potentially dangerous, and buttressed by constitutional protections.  That is what Plaintiff alleges here.  *See, e.g.*, ECF No. 7 ¶¶ 22-59 (alleging that police directed protestors and fired upon them).  Neither party cites cases—let alone any cases post-*Ferreira*—addressing the unique facts presented here.  Given *Ferreira*'s reasoning and the absence of case law confirming that special duty does not exist—while also recognizing the absence of case law directly on point establishing such a special duty in these circumstances—the Court concludes that the claim should proceed.   While the Court cannot say with certainty that a special duty exists in the circumstances presented by Plaintiff here, the Court finds that Plaintiff's allegations are sufficient to survive the motion to dismiss.[3]

## X.      Twelfth Claim: Negligent Training, Supervision, and Discipline – City

The City moves to dismiss this claim and Plaintiff does not appear to oppose dismissal. "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment.  If the employee acted within the scope of her employment, the employer

---

[3] Baxter does not argue that he cannot be held liable for this negligent planning claim under a theory of *respondeat superior*, as in the negligent training, supervision, and discipline claim.  The parties do not distinguish Baxter's own alleged negligent actions in failing to properly plan the protest response from the negligent actions of his employees. Nor do they argue that the "special duty" requirement does not apply to Baxter because, as sheriff, he is not a municipality.   Accordingly, the Court declines to engage further in any such analysis.  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*."[4]   *Velez*, 730 F.3d at 136 (internal quotation marks omitted).

Here, the Amended Complaint states that "[a]t all relevant times" the RPD Officers "were acting within the scope of their employment."  ECF No. 7 ¶ 4.  Therefore, there can be no claim for negligent training, supervision, and discipline against the City, and the City's motion to dismiss that claim is granted.

## XI.     Thirteenth Claim: Negligent Planning – City

Plaintiff alleges the existence of a special duty flowing from the City to the protestors.  ECF No. 7 ¶ 249 ("The CITY had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, or subjected to excessive force and/or falsely arrested by law enforcement.").  For the same reasons articulated above with respect to Baxter, the City's motion to dismiss the negligent planning claim is denied.

## XII.    Fourteenth Claim: Negligence – Individual Defendants

Plaintiff alleges that Individual Defendants are liable under a negligence theory on the basis that they had duties to "permit the protestors to engage in First Amendment Activities" and "not use force against any individual protestor in the absence of individualized cause or legal justification," and that they breached those duties.  ECF No. 7 ¶¶ 267-70.  However, this is the same conduct for which Plaintiff asserts their battery, failure to protect, and excessive force claims.  While, as discussed above, a plaintiff may plead in the alternative, where, as here, they allege intentional conduct—such as for battery or excessive force—"he fails to state negligence."

---

[4] Notably, this standard is different than the standard for negligent training, supervision, and discipline against a county sheriff, as described above.

*Strobridge v. City of Elmira*, No. 20-CV-1125S, 2022 WL 597464, at *11 (W.D.N.Y. Feb. 28, 2022).  Accordingly, Plaintiff's negligence claims against individual defendants are dismissed.

## XIII.   Fifteenth, Sixteenth, and Seventeenth Claims: Municipal Liability Pursuant to *Monell*

In their Fifteenth, Sixteenth, and Seventeenth Claims, Plaintiff seeks to hold the City, the County, and Baxter liable for First and Fourth Amendment violations under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978).  In essence, Plaintiff asserts that the individual officers who caused Plaintiff's injuries were acting in accordance with the City's and County's unconstitutional customs or policies relating to the use of force during peaceful protests.  Defendants, for their part, argue that Plaintiff has not adequately pled such a custom or policy.  For the reasons explained below, the Court disagrees with Defendants and permits the *Monell* claims to proceed.

### A.   Legal Standard

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cnty., Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693.  A plaintiff who seeks to impose liability on local governments pursuant to 42 U.S.C. § 1983 must demonstrate that "action pursuant to official municipal policy" caused the injury.  *Monell*, 436 U.S. at 692.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691) (additional citations omitted).  A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to

> subordinates to such an extent that it amounts to deliberate
> indifference to the rights of those who come into contact with the
> municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, . . . a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal quotation marks and brackets omitted). "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (S.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

**B.      Fifteenth & Seventeenth Claims: Municipal Liability – City**

The City does not move against Plaintiff's Fifteenth and Seventeenth claims for municipal liability, related to the protest response and for retaliating against individuals who record police activity, respectively. Therefore, the Court declines to address the merits of these claims. Suffice it to say that, for many of the same reasons articulated below with respect to municipal liability against the County, Plaintiff appears to have adequately pled *Monell* claims against the City.

20

C.      **Sixteenth Claim: Municipal Liability – County and Baxter for Protests**

The allegations against the County and Baxter largely mirror those Plaintiff asserted against the City.  And, for mainly the same reasons, the County and Baxter's motion to dismiss the municipal liability claim asserted against them is denied.

The County and Baxter take issue with Plaintiff's reference in the Amended Complaint to the County's "Hazard Mitigation Plan," under which the County trained Sheriff's Deputies to use force for both "peaceful demonstrations or acts of violence."  ECF No. 7 ¶ 120.  The County and Baxter argue that this Hazard Mitigation Plan is intended to "reduce the potential impact of natural hazards" and therefore "clearly has nothing to do with training for Sheriff's deputies for responding to a protest."  ECF No. 16-3 at 19.  However, the County and Baxter ignore the crux of Plaintiff's other allegations, which, like those against the City, detail unconstitutional municipal policies, practices, and training failures.

For example, Plaintiff alleges that Baxter and the County subscribed to the theory that Black Lives Matter protests were led by outside agitators, ECF No. 7 ¶ 114, that violent protestors would use nonviolent protestors as human shields, *id.* ¶ 115, that the County and Baxter coordinated with the City and RPD to develop a coordinated protest response plan that included using disproportionate violence centered on retaliation for the message the protestors were expressing, *id.* ¶ 116, and that Baxter and the County failed to train Sheriff's deputies to meaningfully differentiate between peaceful protestors and violent ones, *id.* ¶¶ 117-18.  These allegations plausibly allege an unconstitutional custom or practice.

Unlike Plaintiff's allegations against the City, the Amended Complaint does not contain specific allegations of prior instances in which the Sheriff's Office used excessive force against protestors.  The County and Baxter argue that the absence of such allegations demonstrates that

neither could have had knowledge that any problems were widespread.  However, Plaintiff *does* allege that prior to the protests which are the subject of this lawsuit, County legislators called on the Sheriff's Office to implement new training protocols to correct its deficient practices.  *Id.* ¶ 129.  Although this is a close call, the Court determines at this early stage that such factual allegations are sufficient to survive the motion to dismiss.

## XIV.  Eighteenth Claim: Violation of Right to Monitor – City Defendants

Finally, Plaintiff alleges that Defendants violated their right to record police activity, enshrined in New York's Right to Monitor Act, Civil Rights Law § 79-p.  City Defendants do not move against this claim so the Court declines to address it further.

## CONCLUSION

For the reasons explained above, the Defendants' motions to dismiss, ECF Nos. 16, 18, are GRANTED IN PART and DENIED IN PART.  The Twelfth (Negligent Training, Supervision, and Discipline against the City) and Fourteenth (Negligence against Individual Defendnats) Claims are DISMISSED in their entirety.  The motions are denied in all other respects.  The following claims may proceed:

(1)     unlawful seizure/false arrest against City Defendants, pursuant to 42 U.S.C. § 1983;

(2)     unlawful seizure/false arrest against RPD Officers, pursuant to New York State law;

(3)     evidence fabrication/denial of fair trial  against Couch related to the December 18, 2020 arrest, pursuant to § 1983;

(4)     malicious prosecution against the City and Couch related to the December 18, 2020 arrest, pursuant to New York State law;

(5)     malicious prosecution against Couch related to the December 18, 2020 arrest, pursuant to § 1983;

(6)     assault and battery against the City and Individual Officers, pursuant to New York State law;

(7)     excessive force against Individual Defendants, pursuant to § 1983;

(8)     First Amendment infringement and retaliation against all Defendants, pursuant to § 1983;

(9)     failure to intervene against Individual Defendants, pursuant to § 1983;

(10)    negligent training, supervision, and discipline against Baxter, pursuant to New York State law;

(11)    negligent planning of the protest response against Baxter, pursuant to New York State law;

(13)    negligent planning of the protest response against the City, pursuant to New York State law;

(15)    municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to 42 U.S.C. § 1983;

(16)    municipal/*Monell* liability against the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments related to the protests, pursuant to § 1983;

(17)    municipal/*Monell* liability against the City for a policy, practice, and custom of retaliating against individuals who are lawfully recording police activity in public places, pursuant to § 1983; and

23

(18)    violation of the New York Right to Monitor Act, New York Civil Rights Law § 79-

p, against the City Defendants

A status conference is scheduled in all protest-related cases for July 21, 2022, at 3:00 p.m.

IT IS SO ORDERED.

Dated: June 30, 2022
        Rochester, New York                    _____
                                                HON. FRANK P. GERACI, JR.
                                                United States District Judge
                                                Western District of New York